UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS KEARNEY,<br><br>Defendant. | Crim. No. 4:04cr27-01<br>Crim. No. 2:19cr54 |

### MEMORANDUM OPINION

This matter is before the Court on a Petition filed October 26, 2022 alleging that Mr. Kearney has violated the terms of his supervised release. *United States v. Kearney*, No. 4:04cr27-01, ECF No. 97; *United States v. Kearney*, No. 2:19cr54, ECF No. 2. Mr. Kearney disputed two alleged violations of supervised release: (1) Standard Condition 1: Travel Outside of the Judicial District Without the Permission of the Probation Officer; and (2) Standard Condition 11: Failure to Notify the Probation Officer Within 72 Hours of Being Arrested or Questioned by a Law Enforcement Officer. As indicated in the accompanying Order and during the September 21, 2023 evidentiary hearing, this Court found that Mr. Kearney violated the terms of his supervised release, including the two disputed violations, and revoked his supervised release. This memorandum opinion sets out in detail the Court's reasoning for finding that Mr. Kearney violated the two disputed conditions of supervised release.

1

I.   BACKGROUND

A.   Procedural History

In 2004, Mr. Kearney pleaded guilty in related matters in two jurisdictions: The Eastern District of Virginia, No. 4:04cr27-01, and the Eastern District of North Carolina, No. 2:19cr54. The current revocation hearing deals with both matters.

*No. 4:04cr27-01:* On January 10, 2005, following a guilty plea, Judge Jerome B. Friedman of the Eastern District of Virginia sentenced Defendant to a total of 76 months' imprisonment and 3 years' supervised release on Counts One, Two, Twenty-Two, and Twenty-Nine of the Third Superseding Indictment. J. at 1–3, *United States v. Kearney*, No. 4:04cr27-01, ECF No. 66. The term of imprisonment consisted of 60 months on Count One, 76 months on Count Two, 60 months on Count Twenty-Two, and 76 months on Count Twenty-Nine, all to be served concurrently. *Id.* at 2. The term of supervised release consisted of 3 years on Count One, 3 years on Count Two, 3 years on Count Twenty-Two, and 3 years on Count Twenty-Nine, all to be served concurrently. *Id.* at 3. Count One charged Defendant with Conspiracy to Receive, Possess, and Conceal Property Obtained Thru Assault and Robbery of Persons Having Charge of Mail Matter Money and Property of the United States and Receive and Possess Stolen Money Orders, in violation of 18 U.S.C. § 371; Count Two charged Defendant with Mail Fraud, in violation of 18 U.S.C. § 1341 and 2; Count Twenty-Two charged Defendant with Possession of Stolen Money Orders, in violation of 18 U.S.C. § 500 and 2; and Count Twenty-Nine charged Defendant with Laundering of Monetary Instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 2.

Mr. Kearney's first term of supervised release in this case began on March 13, 2019. SRV Pet. 1 at 2, *United States v. Kearney*, No. 4:04cr27-01, ECF No. 79 ("SRV Pet. 1"). On December 30, 2019 and February 24, 2020 respectively, a Petition (ECF No. 79) and Addendum (ECF No. 87) were filed in *United States v. Kearney*, No. 4:04cr27-01, alleging certain violations of supervised release. The Court revoked Mr. Kearney's supervision and continued his supervision for three years minus 14 days. SRV Order at 1, ECF No. 92. The Court ordered Mr. Kearney to serve a term of 14 days' incarceration on weekends and complete 200 hours of community service. *Id.* at 1–2. The Court also denied Mr. Kearney's Motion to Modify Conditions (ECF No. 89) regarding Special Condition 1, which prohibits him from incurring new credit charges or opening additional lines of credit without approval of the Probation Officer. *Id.* at 2. On July 30, 2021, Mr. Kearney filed an Unopposed Emergency Motion to Amend Special Condition of Supervised Release to remove the special condition requiring Mr. Kearney to complete his 14-day jail sentence on weekends due to COVID-19. Mot. Amend at 1, *United States v. Kearney*, No. 4:04cr27-01, ECF No. 95. The Court granted the Unopposed Emergency Motion. Order, *United States v. Kearney*, No. 4:04cr27-01, ECF No. 96.

*No. 2:19cr54:* On February 18, 2005, following a guilty plea, Judge Terrence W. Boyle of the Eastern District of North Carolina sentenced Defendant to a total of 204 months' imprisonment and 5 years' supervised release for Counts One and Two of the Superseding Indictment. J. at 1–3, *United States v. Kearney*, No. 2:19cr54, ECF No. 1-1. The term of imprisonment consisted of 120 months on Count One and 84

months on Count Two, consecutive to Count One and concurrent with the sentence received in the Eastern District of Virginia, No. 4:04cr27-01. *Id.* at 2. The term of supervised release consisted of 3 years on Count One and 5 years on Count Two, to run concurrently. *Id.* at 3. Count One charged Defendant with Robbery of a Postal Carrier & Aiding and Abetting, in violation of 18 U.S.C. § 2114(a) and 2, and Count Two charged Defendant with Brandishing of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c). *Id.* at 1. Mr. Kearney's term of supervised release in this case began on March 13, 2019. SRV Pet. 2 at 3, *United States v. Kearney*, No. 2:19cr54, ECF No. 2. The Eastern District of Virginia accepted a transfer of jurisdiction effective April 2, 2019. *Id.*

### B. Alleged Violations

This matter is before the Court on a Petition filed October 26, 2022 alleging that Mr. Kearney has violated the terms of his supervised release. *United States v. Kearney*, No. 4:04cr27-01, ECF No. 97 ("SRV Pet. 2"); *United States v. Kearney*, No. 2:19cr54, ECF No. 2 ("SRV Pet. 2"). The Petition alleges violations of the following terms of supervised release: (1) Mandatory Condition: Commission of a Crime – Possession of Marijuana; (2) Mandatory Condition: Commission of a Crime – Trespass General; (3) Special Condition: Failure to Pay Restitution as Ordered by the Court; (4) Standard Condition 1: Travel Outside of the Judicial District Without the Permission of the Probation Officer; (5) Standard Condition 2: Failure to Submit Monthly Supervision Reports as Directed; and (6) Standard Condition 11: Failure to Notify the Probation Officer Within 72 Hours of Being Arrested or Questioned by a Law

4

Enforcement Officer. By agreement of the parties, the Court dismissed the alleged violation of Mandatory Condition: Commission of a Crime – Possession of Marijuana. *See* Order, *United States v. Kearney*, No. 4:04cr27-01, ECF No. 113; Order, *United States v. Kearney*, No. 2:19cr54, ECF No. 13.

### C.  Factual Allegations in the Petition

The two disputed violations, in addition to the dismissed violation for Mandatory Condition: Commission of a Crime – Possession of Marijuana, are based on an alleged trip to Miami, Florida that Mr. Kearney took without the Probation Office's approval. SRV Pet. 2 at 4–5. On October 11, 2022, the Probation Officer spoke with a Drug Enforcement Administration ("DEA") Taskforce agent from Miami, Florida. *Id.* at 4. The agent reported that on October 5, 2022, the Taskforce conducted surveillance on incoming bags at the Miami International Airport ("MIA"). *Id.* The Taskforce had received a tip that two "ghost bags"[1] were arriving from California to MIA on that date. *Id.* The agents later identified the two ghost bags and found forty-seven pounds of marijuana in the bags. *Id.* They allowed the two ghost bags to enter the baggage claim area. *Id.*

On the same day, the agents also observed an individual sitting on the floor in the baggage claim area of the airport for over two hours. *Id.* As the two ghost bags entered the baggage claim area, they saw the individual approach and attempt to

---

[1] "Ghost bags" refer to unescorted luggage that are checked into a flight without a ticketed passenger on the associated flight. Hr'g Tr. at 72:23–73:3. An individual typically goes to an airport, purchases a ticket, checks their bags in, and leaves the airport. *Id.*

5

retrieve the bags. *Id.* The agents stopped and questioned the individual. *Id.* The individual denied that the bags were his and did not consent to being searched. *Id.* He provided a photo ID card containing Mr. Thomas Kearney's identifying information. *Id.* The individual was not charged or prosecuted, and the bags and controlled substances were confiscated and destroyed. *Id.* The DEA Taskforce agent forwarded a photo of the ID card that the individual presented to the Probation Officer, and the Probation Officer confirmed that the photo in the ID card matched Mr. Kearney's appearance. *Id.*

On October 13, 2022, the Probation Officer, the Supervisory Probation Officer, and Mr. Kearney participated in a conference to address these events. *Id.* Mr. Kearney denied traveling to Miami, Florida and denied the alleged conduct. *Id.* He claimed that he was working in Newport News, Virginia and further advised that he has had issues in the past with an unknown individual using his information. *Id.*

### D.     September 21, 2023 Hearing

On September 21, 2023, Mr. Kearney appeared before this Court with counsel for a hearing on the Petition. Minute Entry, *United States v. Kearney*, No. 4:04cr27-01, ECF No. 121; Minute Entry, *United States v. Kearney*, No. 2:19cr54, ECF No. 18. Mr. Kearney disputed two of the alleged violations: (1) Standard Condition 1: Travel Outside of the Judicial District Without the Permission of the Probation Officer; and (2) Standard Condition 11: Failure to Notify the Probation Officer Within 72 Hours of Being Arrested or Questioned by a Law Enforcement Officer. Ahead of the hearing, defense counsel submitted a position paper to the Court on September 14, 2023. The

Government submitted a response to the Court on September 18, 2023. Defense counsel submitted a reply that same day. As proclaimed during the evidentiary hearing, the Court finds, by a preponderance of the evidence, that Mr. Kearney violated the disputed conditions.

## II.   LEGAL STANDARD

18 U.S.C. § 3583(e)(3) provides that a district court may revoke a defendant's supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." To meet the preponderance of the evidence standard, the Government needs to prove only that the existence of a fact is "more probable than its nonexistence." *United States v. Padgett*, 788 F.3d 370, 374 (4th Cir. 2015) (internal quotation marks and citation omitted); *see also United States v. Brown*, 352 F. Supp. 3d 589, 594 (E.D. Va. 2018) ("'[P]reponderance of the evidence' is defined as more probable than not."); *United States v. 1735 N. Lynn St.*, 676 F. Supp. 693, 704 (E.D. Va. 1987) ("To 'establish by a preponderance of the evidence' means to prove that something is more likely so than not so."); *Daughety v. U.S. Dep't of Army*, No. CBD 04-2114, 2007 WL 9754293, at *3 (D. Md. Feb. 16, 2007) ("To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.").

## III.   ANALYSIS

Here, the Court finds by a preponderance of the evidence that Mr. Kearney violated the two disputed conditions based on his alleged trip to Miami, Florida. In sum, the Court found the Government's witnesses credible and, in particular, credits

7

Officer Swikehardt's statement that he is certain that Mr. Kearney is the same individual he saw at MIA on October 5, 2022. By contrast, the Court does not find Mr. Kearney's alibi credible based on his history of obstructing justice, the lack of authentication for certain pieces of evidence, and his inconsistent stories. The Court elaborates on its reasoning below.

### A. Government Evidence

#### i. *Government Witnesses*

The Court credits the testimonies of Officer Swikehardt[2] and the Probation Officer in support of its conclusion that Mr. Kearney violated the two disputed conditions. During the evidentiary hearing, Officer Swikehardt attested multiple times to his certainty that Mr. Kearney was the same individual he stopped at MIA on October 5, 2022. Hr'g Tr. at 86:22–87:7, 99:10–25, 237:14–23. Officer Swikehardt testified that he has worked in law enforcement for thirty-five years and has worked in DEA as a K-9 handler for twenty-one of the thirty-five years. *Id.* at 71:23–25. Officer Swikehardt regularly monitors MIA for ghost bags. *Id.* at 73:23–74:6. He testified that the DEA Taskforce had received a tip from American Airlines that two ghost bags on a flight from Dallas Fort Worth would arrive at MIA on October 5, 2022. *Id.* at 72:14–22. The agents searched the bags and found forty-seven pounds of marijuana in the two bags. *Id.* at 90:2–18, 94:3–5. They allowed the ghost bags to move on the baggage

---

[2] Officer Swikehardt is the DEA Taskforce agent who interacted with the individual claiming to be Mr. Kearney in MIA. Hr'g Tr. at 71:4–18, 83:17–85:8.

carousel into the baggage claim area and monitored the bags to determine if any individual would retrieve the bags. *Id.* at 82:22–83:13.

The agents then observed a Black man approach the bags and remove them from the carousel. *Id.* at 83:10–13. He began to leave the airport with the bags when agents stopped him. *Id.* at 83:16–18. Officer Swikehardt testified that the man became very agitated and claimed that he was picking up the bags for a Chinese woman who just ran out the door. *Id.* at 83:16–25. The man was a bit argumentative and clearly did not want to deal with police. *Id.* During the interaction, the man provided his Virginia state ID card, which listed Mr. Kearney's name and contained a photo of Mr. Kearney. *Id.* at 84:21–85:8. The individual stated his name was Mr. Kearney, and Officer Swikehardt positively identified him through the photo on the ID card as the same individual. *Id.* at 85:5–8. Officer Swikehardt also took a photo of the ID card. *Id.*; *see* Gov't Ex. 1.

During the evidentiary hearing, Officer Swikehardt testified that the photo on the ID card "perfectly" matched the man at MIA. Hr'g Tr. at 86:22–87:4. He further identified Mr. Kearney in the courtroom as the same individual from MIA. *Id.* After the incident on October 5, 2022, Officer Swikehardt contacted Mr. Kearney's Probation Officer on October 11, 2022 and sent the photo of the ID card to the Probation Officer. *Id.* at 98:7–99:9. The Probation Officer confirmed that the photo in the ID card was Mr. Kearney. On October 28, 2022, the Probation Officer sent Officer Swikehardt a photo of Mr. Kearney, and Officer Swikehardt confirmed that the individual at MIA matched the photo. *Id.* at 99:10–25; *see* Gov't Ex. 2. Finally, near the end of

9

the parties' presentation of evidence, the Government recalled Officer Swikehardt, who confirmed that, even after hearing defense witnesses' testimonies and seeing the defense exhibits, he is still "absolutely certain" that Mr. Kearney was at MIA on October 5, 2022. Hr'g Tr. at 237:11–23. The Court finds Officer Swikehardt's multiple confirmations that Mr. Kearney was at MIA credible.

The Probation Officer's testimony about Mr. Kearney's actions after October 5, 2022 bolstered the Court's view that Mr. Kearney was in fact at MIA in violation of the two disputed conditions. After the Probation Officer's conversation with Officer Swikehardt, the Probation Officer scheduled a conference with Mr. Kearney and the Supervisory Probation Officer for October 13, 2022. Hr'g Tr. at 47:12–17. During the conference, Mr. Kearney denied being in Florida; however, the Probation Officer testified that he did not believe Mr. Kearney's denial based on his past interactions with Mr. Kearney and Officer Swikehardt's positive identification. *Id.* at 47:12–20. The Probation Officer further attested to the lack of evidence he received from Mr. Kearney after October 13, 2022 and indicated that he was not aware of any of the evidence that Mr. Kearney presented at the hearing until defense counsel submitted the documents to the Court. *Id.* at 35:3–36:2. Other than an email from Mr. Kearney's son, Azariah Kearney; an email with the subject line "MP4" without any attachment; an email stating that the video files were too long; and a photo of Mr. Kearney working as a youth boxing trainer without any date stamp, the Probation Officer did not receive any evidence from Mr. Kearney of his whereabouts on October 5, 2022. *Id.* at 23:5–26:10. The Probation Officer testified that he was surprised by defense counsel's

10

submissions because during the October 13, 2022 conference, Mr. Kearney only stated that he was working on October 5, 2022. *Id.* at 35:14–18. Mr. Kearney's lack of communication with his Probation Officer about his claimed alibi and his initial lack of evidence detract from his credibility. Like Officer Swikehardt, the Probation Officer believes "with 100 percent certainty" that Mr. Kearney was at MIA on October 5, 2022. *Id.* at 58:14–59:11. The Court places great weight on the testimonies of Officer Swikehardt and the Probation Officer in finding that Mr. Kearney violated the two disputed conditions.

### ii. *Government Exhibits*

Additionally, the Government submitted as exhibits (1) the photo of Mr. Kearney's Virginia state ID card from Officer Swikehardt (Gov't Ex. 1), (2) an email from Azariah Kearney, Defendant's son, dated November 1, 2022 (Gov't Ex. 3), and (3) images of Azariah Kearney from Facebook (Gov't Ex. 4). Based on the Government's evidence, the Court did not find the email from Azariah Kearney credible.

First, Azariah claims that he took Mr. Kearney's "driver's license" in part because he needed to be 25 years old to rent a car. Gov't Ex. 3. However, Mr. Kearney does not have a driver's license—only a Virginia state ID. *See* Gov't Ex. 1. In fact, the state ID explicitly states, "NOT A LICENSE TO OPERATE A MOTOR VEHICLE," on the right-hand side. *Id.* Azariah would not have been able to rent a car or even drive with Mr. Kearney's ID. Azariah's email is not consistent with the evidence.

Second, the photos of Azariah that the Government found on Facebook do not look like Mr. Kearney's photo in the Virginia ID. *See* Gov't Ex. 4. Although defense

11

counsel submitted a photo of Azariah that arguably looks closer to Mr. Kearney's appearance than the Facebook photos, they are still not so similar in appearance that an individual would mistake one for the other. *See* Def. Ex. 14. More generally, the Court finds it hard to believe that a 21-year-old would have been able to pass as a 47-year-old, especially to law enforcement agents who specifically examined the individual's features for identification purposes. During the evidentiary hearing, the Probation Officer also testified that he did not believe Azariah's email. Hr'g Tr. at 48:5–12. As such, the Court finds that Mr. Kearney's first proffered alibi is not credible.

### B.     Defendant's Lack of Credibility

In addition to the Government's evidence, the Court finds that Defendant is not a credible individual. Defendant has a history of obstructing justice by convincing other individuals to provide false alibis on his behalf. The presentence reports for his original convictions in No. 4:04cr27-01 and No. 2:19cr54 elaborate on his past attempts to deceive law enforcement and the Court. In No. 4:04cr27-01, the presentence report indicated that while Mr. Kearney was in federal custody, he corresponded with his girlfriend, Nikia Washington, by letter to persuade her to provide false information. Presentence Investigation Report ¶ 91, *United States v. Kearney*, No. 4:04cr27-01 (E.D. Va. Feb. 4, 2005) ("E.D. Va. PSR"). He also attempted to have Ms. Washington persuade other individuals to provide false alibis and false testimony of his whereabouts for the offense. *Id.* Ms. Washington initially provided false information to investigating officials but later recanted and provided the correct information. *Id.* Mr. Kearney also discussed attempting to find an "eyewitness" to provide

12

an alibi and finding "2 or 3 statements from some people in Florida without any heavy criminal records." *Id.* ¶ 90.

In No. 2:19cr54, the presentence report describes the same obstructive conduct in greater detail. In Mr. Kearney's letter to Ms. Washington about an "Indecent Proposal," he instructed Ms. Washington to reach out to various individuals, including but not limited to "Black," "Teensy," Bridgette, and Bo. Presentence Investigation Report ¶¶ 26–27, *United States v. Kearney*, No. 2:19cr54 (E.D. Va. Jan. 6, 2005) ("E.D.N.C. PSR"). The letter instructed Ms. Washington to ask Bo and Bridgette if they could tell "these people" that Mr. Kearney and Ms. Washington "chilled at their crib January 13th . . . January 15th . . . every evening when they got off work until about 8:00 p.m. . . . that's an alibi from about 5-8 p.m." *Id.* ¶ 27. He further instructed Ms. Washington on what to tell his lawyer with respect to when they met and what they did on various dates. *Id.* Mr. Kearney's history of influencing other individuals to provide alibis on his behalf strains the credibility of his alibi in the current revocation hearing.

Furthermore, the Court notes the extensive dishonesty that Mr. Kearney exhibited toward the Probation Officer prior to his first supervised release revocation hearing on March 12, 2020. SRV Pet. 1, ECF No. 79. He told the Probation Officer multiple times that he lived alone despite actually living with a registered sex offender in violation of his terms of supervised release. *Id.* Mr. Kearney has shown a repeated history of dishonesty for personal gain and a disregard for the Court's authority.

13

### C. Defense Evidence

Finally, the Court did not find Mr. Kearney's evidence sufficient to provide an alibi. Three defense witnesses testified on Mr. Kearney's whereabouts in the afternoon and evening of October 5, 2022[3]: Asa Jackson, Jalen McHerrin, and Pamela Winfield. First, the Court found Mr. Jackson to be a credible witness and commends him for the community service projects that he is involved in. However, although Mr. Jackson attested to Mr. Kearney's general volunteer work with the CAN Festival, which ran from September 10, 2022 to October 8, 2022, he could not testify specifically to Mr. Kearney's whereabouts on October 5, 2022. Hr'g Tr. at 148:14–22. He further indicated that the volunteer dates listed in his letter were based on information he received from his Operations Director. *Id.* at 146:9–12. His Operations Director created this list *in conjunction* with Mr. Kearney, and Mr. Jackson testified that he did not know if Mr. Kearney or the Operations Director actually came up with these dates. *Id.* at 146:22–23, 156:20–23. Based on Mr. Jackson's testimony, the Court declines to find the October 5, 2022 volunteer date credible. Mr. Jackson's lack of personal knowledge about Mr. Kearney's whereabouts on October 5, 2022, coupled with Mr. Kearney's influence on the list of volunteer dates in Mr. Jackson's letter, contribute to the Court's decision not to credit the October 5, 2022 volunteer date.

Second, the Court declines to credit Defense Exhibit 3, which contains video footage of a boxing class that Mr. Kearney allegedly taught in the afternoon of

---

[3] The individual alleged to be Mr. Kearney interacted with DEA agents in MIA at approximately 5:00 pm on October 5, 2022.

October 5, 2022. During the evidentiary hearing, Ms. Rivera indicated that the video in question came directly from Mr. Kearney. *Id.* at 232:5–7. Given that Mr. Kearney was the source of the video, the Court does not find the video reliable without proper authentication or testimony from the individual who recorded the video. Mr. Kearney or any other individual could have easily altered the video by adding a date and time stamp of choice. Although Mr. McHerrin testified that the video footage was from October 5, 2022, the Court does not find his testimony credible. Specifically, he testified that the date and time stamp came directly from the cell phone. *Id.* at 185:19–186:6. When asked how he knew this information, he stated, "Because I was there that day." *Id.* at 186:7–8. He also testified that he knew the video footage's date to be October 5, 2022 "[b]ecause [he] remember[ed]," and that he "still remember[ed] things from when [he] was 6 years old." *Id.* at 187:1–4. The Court finds Mr. McHerrin too quick to defend Mr. Kearney without sufficient reasoning to support his statements. Additionally, the Court notes that Officer Swikehardt testified that Mr. Kearney did not have the same appearance at MIA as he did in the video. *Id.* at 238:3–12. At MIA, Mr. Kearney was clean-shaven, whereas he had a beard in the video, which suggests that the events in the video footage occurred on a different date. *Id.* As such, the Court declines to credit the video as evidence of Mr. Kearney's whereabouts on October 5, 2022.

Finally, the Court heard testimony from Ms. Pamela Winfield that Mr. Kearney was allegedly at Todd's Eastside Boxing Club beginning at 6:30 pm to help prepare the gym for an inspection and for a Zoom meeting scheduled at 8:00 pm on

15

October 5, 2022. *Id.* at 122:6–17. The Court does not find Ms. Winfield to be a dishonest witness; however, without further evidence of Mr. Kearney's whereabouts on October 5, 2022, the Court does not find her testimony alone to be sufficiently persuasive. Ms. Winfield indicated that the Zoom meeting date is in her email inbox and on her calendar, but the Court has neither piece of evidence before it. *Id.* at 121:12–25, 131:2–17. The Zoom meeting minutes also do not list the date of the Zoom meeting. Due to Mr. Kearney's extensive history of dishonesty and manipulating other individuals for an alibi, the Court is not convinced by one individual's recollection to establish Mr. Kearney's whereabouts on October 5, 2022.

## IV.   CONCLUSION

For the foregoing reasons and as stated during the evidentiary hearing on September 21, 2023, the Court finds, by a preponderance of the evidence, that Defendant violated the two disputed conditions: (1) Standard Condition 1: Travel Outside of the Judicial District Without the Permission of the Probation Officer; and (2) Standard Condition 11: Failure to Notify the Probation Officer Within 72 Hours of Being Arrested or Questioned by a Law Enforcement Officer. The Clerk is **REQUESTED** to send a copy of this memorandum opinion to Defendant Thomas Kearney, his counsel, the United States Attorney's Office, and the United States Probation Office.

**IT IS SO ORDERED.**

/s/
Arenda L. Wright Allen
United States District Judge

October 2, 2023
Norfolk, Virginia